IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 9, 2024 Session

**KRISTINA COLE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 17-01568     James Jones, Jr., Judge**

**_____**

**No. W2023-01307-CCA-R3-ECN**
**_____**

The Petitioner, Kristina Cole, appeals the Shelby County Criminal Court's summary denial of her petition for a writ of error coram nobis, claiming newly discovered evidence of an improper ex parte communication between the assistant district attorney general and the trial court about her case. Based upon our review of the oral arguments, the record, and the parties' briefs, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and ROBERT W. WEDEMEYER, J., joined.

Terrell L. Tooten, Memphis, Tennessee, for the appellant, Kristina Cole.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Steve Mulroy, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On March 30, 2017, the State indicted the Petitioner and two codefendants, Jason White and Montez Mullins, for drug offenses involving methamphetamine. The defendants were tried jointly in July 2017, and the jury convicted the Petitioner of conspiracy to possess methamphetamine with the intent to sell in a drug-free zone, conspiracy to possess methamphetamine with the intent to deliver in a drug-free zone, facilitation of possession of methamphetamine with the intent to sell in a drug-free zone, and possession of methamphetamine with the intent to deliver in a drug-free zone. All of the offenses were Class A felonies. The trial court merged the conspiracy convictions and

merged the facilitation and possession convictions and sentenced the Petitioner to an effective sentence of thirteen and one-half years in confinement. This court affirmed the convictions on direct appeal. *State v. Cole*, No. W2017-01980-CCA-R3-CD, 2018 WL 5810011, at *1 (Tenn. Crim. App. Nov. 5, 2018), *perm. app. denied* (Tenn. Mar. 28, 2019).

Our direct appeal opinion provides the following summary of the crimes: In February 2016, the Bartlett Police Department intercepted a FedEx package that had been sent from California to 2552 Linwood Road in Bartlett. *Id*. at *1. The package was addressed to "Bailey Green" and contained $12,000 to $15,000 worth of methamphetamine. *Id*. Detective Mark Gaia determined that the address on the package was invalid and that the correct address was 2552 Jenwood Road, which was the Petitioner's residence. *Id*. at *1 n.1. Officers arranged a controlled delivery of the package to the residence, which was in a drug-free zone, and the Petitioner accepted the package. *Id*. Detective Gaia obtained a search warrant for the Petitioner's home. *Id*. During the search, Detective Gaia saw on a laptop that the Petitioner recently had tracked the package on FedEx's website. *Id*. He also found evidence that linked the Petitioner to codefendant White, who was in prison. *See id*.

Through law enforcement's investigation, officers learned that codefendant Mullins had sent the package to the Petitioner and that codefendant White was the Petitioner's boyfriend. *Id*. Text messages on one of the Petitioner's cellular telephones showed that she had communicated with codefendant White about the delivery of the package to her residence. *See Id*. at *3. A second detective interviewed codefendant Mullins, and codefendant Mullins claimed in his recorded statement that the Petitioner did not know methamphetamine was in the package. *Id*. at *4. Nevertheless, the jury chose to convict the Petitioner of the offenses.

On direct appeal of her convictions to this court, the Petitioner claimed that the evidence was insufficient to show that she knew methamphetamine was in the package or that she knew what was going to happen to the package upon its arrival. *Id*. at *5. This court found the evidence sufficient to support the convictions. *Id*. at *7. Subsequently, the Petitioner filed a petition for post-conviction relief in which she raised multiple claims of ineffective assistance of counsel, including that trial counsel was ineffective for failing to object to irrelevant and prejudicial text messages about delivery of the package, for failing to file a *Bruton* motion to exclude codefendant Mullins's recorded statement, and for conceding that she tracked delivery of the package. *Cole v. State*, No. W2022-01245-CCA-R3-PC, 2023 WL 3337214, at *8-10 (Tenn. Crim. App. May 10, 2023), *perm. app. denied* (Tenn. Sept. 11, 2023). The post-conviction court denied the petition, this court affirmed the judgment of the post-conviction court, and our supreme court denied the Petitioner's application for permission to appeal. *Id*. at *1.

On August 25, 2023, the Petitioner filed a pro se petition for a writ of error coram nobis, claiming: (1) newly discovered evidence of judicial misconduct that caused her convictions; (2) newly discovered evidence of prosecutorial misconduct that caused her convictions; and (3) newly discovered evidence that could prove her actual innocence. The Petitioner alleged that the newly discovered evidence consisted of an ex parte transfer hearing during which the assistant district attorney general who prosecuted her case and the trial judge who presided over her trial discussed the facts of her case.

The Petitioner attached a copy of the transfer hearing transcript to her petition. The transcript reflects that on May 16, 2016, the trial court held a hearing on the State's request to have codefendant White transported from a Nashville prison to Shelby County for his arraignment. During the brief hearing, the following exchange occurred between the assistant district attorney general and the trial court:

> [The State]: On a matter not on the Court's calendar. It is scheduled for June the 2nd is a James White (sic) and Kristina Cole. James White is in a unique situation in that he is an inmate at the Riverbend Maximum Security Prison in Nashville. And I'm prepared -- I prepared an order to have him transported if the Clerk's Office would be so kind to transmit that fugitive so that they will go get him.
>
> THE COURT: I will sign the order and hopefully he'll be here for his arraignment day.
>
> [The State]: Okay. I think the Court will enjoy the facts on this case. I've never seen anything quite like it.
>
> THE COURT: Conspiracy and in a drug-free school zone.
>
> [The State]: Allegedly Mr. White ordered half a kilo of methamphetamine from another inmate in California who arranged to have it shipped FedEx to his fiance's house in Bartlett, and of course, it was unaccepted.
>
> THE COURT: Is the shipper not involved in this?
>
> [The State]: We do not know who the shipper is.
>
> THE COURT: Amazon.com I guess. Everything else --
>
> [The State]: I think it'd be fun to find --

- 3 -

THE COURT: -- everything else is available. I guess they could always do the classic surprise -- you know --

[The State]: Well, it would have been -- it might have been encrypted had she not been getting cellphone calls from Mr. White.

THE COURT: Updates, huh?

[The State]: The whole time and while police were there.

THE COURT: What's he doing time for?

[The State]: Especially agg kidnapping, especially agg robbery. He's apparently a ranking member --

THE COURT: Got a quite -- got a quite of a resume.

[The State]: He's a ranking member of the Vice Lords in prison.

THE COURT: Well --

[The State]: So, he's -- he's very comfortable. Have a good afternoon, Judge.

The Petitioner asserted that the ex parte communication showed that the assistant district attorney general and the trial judge had a "prejudgment" of her guilt and that they "clearly had an unspoken agreement during this ex parte hearing constituting a fundamental right that affected the outcome of [her] trial." In support of her assertion, she claimed that the trial judge subsequently overruled her motion to suppress evidence obtained in violation of the Fourth Amendment despite Detective Gaia lying in his sworn affidavit for the search warrant that the package was addressed to 2552 Jenwood Road when the package was addressed to 2552 Linwood Road. The Petitioner further asserted that the ex parte communication violated her rights to the assistance of counsel and to due process. The Petitioner claimed that the transcript of the transfer hearing was unavailable "during her criminal procedure" because the hearing occurred without her attorney present, that the transcript was "withheld" from her, and that "there would have been a different outcome" if the transcript had been available. The Petitioner requested that the coram nobis court set aside her convictions or that the coram nobis court conduct an evidentiary hearing.

- 4 -

On September 7, 2023, the coram nobis court entered an order summarily denying the petition on the basis that the evidence presented by the Petitioner did not qualify as "newly discovered evidence." This appeal followed.

## ANALYSIS

The Petitioner contends that the coram nobis court erred by denying her petition without a hearing and without granting her a new trial. She requests that this court either (1) remand the case for an evidentiary hearing or (2) find that the ex parte communication violated her right to due process and remand the case for a new trial before a fair and impartial judge. The State contends that summary denial of the petition was proper because the petition was filed outside the statute of limitations and did not allege newly discovered evidence of actual innocence that warrants tolling the statute of limitations. We agree with the State.

A writ of error coram nobis is an extraordinary remedy by which the court may provide relief from a judgment under only narrow and limited circumstances. *State v. Mixon*, 983 S.W.2d 661, 666 (Tenn. 1999). Tennessee Code Annotated section 40-26-105 provides this remedy to criminal defendants:

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial. The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.

Tenn. Code Ann. § 40-26-105(b), (c); *see State v. Vasques*, 221 S.W.3d 514, 525-28 (Tenn. 2007) (stating that the standard of review is "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different").

A petition for writ of error coram nobis:

> may be granted only when the *coram nobis* petition is in writing, describes "with particularity" the substance of the alleged newly discovered evidence, and demonstrates that it qualifies as newly discovered evidence. *Payne v. State*, 493 S.W.3d 478, 484-85 (Tenn. 2016) (citing [*Harris v. State*, 301

S.W.3d 141, 152 (Tenn. 2010)] (Koch, J., concurring)). In order to qualify as newly discovered evidence, "the proffered evidence must be (a) evidence of facts existing, but not yet ascertained, at the time of the original trial, (b) admissible, and (c) credible." *Id.*

*Nunley v. State*, 552 S.W.3d 800, 816 (Tenn. 2018).

To be considered "without fault," the petitioner must show that "the exercise of reasonable diligence would not have led to a timely discovery of the new information." *Vasques*, 221 S.W.3d at 527. "[C]oram nobis petitions with inadequate allegations are susceptible to summary dismissal on the face of the petition, without discovery or an evidentiary hearing[.]" *Nunley*, 552 S.W.3d at 831.

A petition for a writ of error coram nobis must be filed within one year after the judgment becomes final. Tenn. Code Ann. § 27-7-103. For the purposes of coram nobis relief, a judgment becomes final thirty days after the entry of the judgment in the trial court if no post-trial motion is filed, or upon entry of an order disposing of a timely filed post-trial motion. *Mixon*, 983 S.W.2d at 670. Timeliness of the petition is not an affirmative defense; it is an essential element of a coram nobis claim. *Clardy v. State*, --- S.W.3d ---, 2024 WL 3157350, at *7 (Tenn. June 25, 2024). Therefore, the petition must show on its face that it is timely. *Id.* The one-year statute of limitations may, however, be tolled on due process grounds if the petitioner seeks relief based upon newly discovered evidence of actual innocence. *Nunley*, 552 S.W.3d at 828-29 (citation omitted).

Recently, our supreme court explained, step-by-step, the procedure a coram nobis court is to take when a petitioner files an untimely petition and seeks tolling of the one-year statute of limitations:

[T]he coram nobis court should first ascertain whether the petition cites new evidence discovered after expiration of the limitations period, and whether the coram nobis petition shows it was filed no more than one year after the petitioner discovered the new evidence. If so, the coram nobis court should assume arguendo the veracity of the new evidence cited in the coram nobis petition, for the purpose of assessing whether to toll the statute of limitations. To grant tolling, the coram nobis court must find that the new evidence would, if credited, clearly and convincingly show that the petitioner is actually innocent of the underlying crime, i.e., that the petitioner did not commit the crime. [*Keen v. State*, 398 S.W.3d 594, 612 (Tenn. 2012)]. If tolling is granted, the coram nobis court may then proceed to address the merits of the coram nobis petition, under the standards in the coram nobis statute, Tennessee Code Annotated section 40-26-105(b).

- 6 -

*Clardy*, 2024 WL 3157350, at *13. "If a petition for a writ of error coram nobis fails to show on its face either that it has been timely filed in accordance with Tennessee Code section 27-7-103 or specific facts showing why the petitioner is entitled to equitable tolling of the statute of limitations, the trial court is within its discretion to summarily dismiss it." *Nunley*, 552 S.W.3d at 829. Although the decision to grant or deny coram nobis relief rests within the sound discretion of the trial court, *see Vasques*, 221 S.W.3d at 527-28, "[w]hether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness." *Nunley*, 552 S.W.3d at 830 (citation omitted).

Turning to the Petitioner's coram nobis claim, the record on direct appeal of her convictions reflects that the trial court denied her motion for new trial on September 29, 2017.[1] Thus, the limitations period began to run thirty days later on October 29, 2017, and she had until October 29, 2018, to file her coram nobis petition. The pro se petition filed on August 25, 2023, was untimely by almost five years. The Petitioner did not request tolling of the statute of limitations. She also did not address the untimeliness of the petition in that she failed to provide any facts to show when she discovered the "new" evidence and to show that she filed the petition within one year of the discovery. Even on appeal, the Petitioner does not make any argument as to why the statute of limitations should be tolled or allege any facts to support tolling. We note that in May 2020, codefendant White filed a motion for the post-conviction court to recuse itself from his case based on the same ex parte communication. *See White v. State*, No. W2022-01437-CCA-R3-PC, 2023 WL 6142444, at *5 (Tenn. Crim. App. Sept. 20, 2023), *perm. app. denied* (Tenn. Apr. 11, 2024). However, the Petitioner did not file her pro se petition for a writ of error coram nobis until more than three years later in August 2023. Accordingly, the coram nobis court could have summarily denied the petition on the basis of untimeliness alone. Finally, evidence that the trial judge and the State were biased against the Petitioner does not qualify as evidence of the Petitioner's actual innocence. Thus, we conclude that the coram nobis court did not err by denying the petition without a hearing.

Furthermore, the alternative relief that the Petitioner requests in her petition, in her brief, and at oral arguments is not available under a writ of error coram nobis. In her brief, she states:

> The ultimate issue before the trial court, and this Court is: whether [Petitioner] received Due Process under the law regarding the ex parte Hearing that the trial court engaged in; separate and apart from whether or not there was newly discovered evidence.

---

[1] This court may take judicial notice of its own records. *State v. Lawson*, 291 S.W.3d 864, 869 (Tenn. 2009).

This statement, though, represents a gross misunderstanding of the writ of error coram nobis. The issue the Petitioner was supposed to address on appeal is the discovery of later-arising new evidence, that she was not at fault for not discovering earlier, and that establishes she is actually innocent of the crimes for which she was convicted. From our review, it appears that she did not even attempt to answer this question.

This court's jurisdiction is appellate only and extends to the "review of the final judgments of trial courts in . . . criminal cases[.]" Tenn. Code Ann. § 16-5-108(a)(1). The final judgment before us is the summary denial of a petition for a writ of error coram nobis. This court does not have jurisdiction to address the issue of prosecutorial or judicial misconduct raised as a stand-alone due process claim.[2] Therefore, we conclude that the Petitioner is not entitled to relief.

## **CONCLUSION**

Upon review, we affirm the coram nobis court's summary denial of the petition.

_____
JOHN W. CAMPBELL, SR., JUDGE

---

[2] We note that this court addressed the ex parte communication in its opinion affirming the denial of Mr. White's post-conviction petition. *White*, 2023 WL 6142444, at *14. This court concluded that the trial court's comments, standing alone, did not prejudice the trial court against Mr. White. *Id*.